The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases and lots of good lawyers. We're looking forward to the arguments. In the first case, United States v. Edwin Brown, Mr. Revesz, good to have you with us. You may be, you can come to the podium and explain to us what you want to say. Good morning, Your Honors, and may it please the Court, Joshua Revesz for Appellant Edwin Brown. Mr. Brown's counsel told him there was no difference between two ways of entering a guilty plea. Counsel was egregiously wrong and after entering an open plea, Mr. Brown received a sentence that was seven and a half years higher than had he accepted the government's plea deal. In this federal habeas proceeding, the government concedes that Brown's counsel performed efficiently, but contests that Brown was prejudiced by that performance. But Brown was prejudiced because there was at least a reasonable probability that, but for his counsel's bad advice, Brown would have taken the 10-year plea deal. The reasonable probability inquiry is unusually straightforward here. We know that Mr. Brown was open to pleading guilty because he pleaded guilty the same week he rejected the government's plea offer. And it is self-evident there is a significant difference between a 10-year statutory maximum and a 90-year one. So any defendant desiring to plead guilty would have accepted the government's plea deal. That is all clear from the cold record, which is why the district court erred in demanding that Brown submit additional contemporaneous evidence to prove his case. And again, contrary to the district court, there is no evidence weighing on the other side, not the appeal waiver consideration. Aren't there factual findings that you have to contend with? I know you say any defendant would have taken the deal, but the district court made some factual findings about what mattered to this particular defendant. And we have a pretty high standard of review for that, don't we? Yeah, so I have two responses to that. First, I don't think they are factual findings. I think they're assessments of how the defendant would have acted counterfactually. Strickland makes clear that the prejudice inquiry is a mixed question of law and fact, that this court reviews de novo. So you think it's not a factual finding that he would not have waived his right to appeal, that that mattered to him more than the defendant? I don't think that's a factual finding, but even if it is a factual finding and there's a factual finding — How is that not a factual finding? Because it's an assessment of how he would have behaved in a counterfactual world that was never — Is that not a fact? How is that the law? I don't think it's a fact. It's a question about how he would have behaved in a world that never happened. Do you have a case that stands for that? You know, I think this Court in Merzbacher and Martin always reviews these counterfactual questions through de novo inquiry. The Court has never, you know, assessed this exact question, but I don't think you need to assess it. Wasn't there testimony? And didn't the magistrate have to weigh some credibility? There was testimony. I don't think the magistrate made an explicit credibility finding in this case. I don't think that you can infer a credibility finding from the way the decision was written. But I guess my second answer is that you don't need to worry about any of this because to the extent there was a finding, it was a finding infected by a legal error because it rested on Brown's conversation with Wentz after Wentz provided the bad advice. I think, you know, the law is very clear. And what exactly is that? Are you talking about a Rule 11 colloquy? No, I'm talking about, you know, Wentz testified. My client cared about the appeal waiver. But that conversation occurred after Attorney Wentz told Mr. Brown there was no difference between the two. I thought both attorneys said that. The attorney who wasn't deficient said it. Did you tell him? And the attorney who was deficient said it. I'm sorry. Yes. I think the conversation with Wentz is clearly out because it came after the bad advice. I think the conversation with Harper has no probative value. The district court didn't rely on it. The magistrate judge didn't rely on it. And for good reason. I thought the magistrate judge, in fact, said that he did credit both of the attorneys' testimony. He found them credible. Yes. I certainly agree the attorneys are credible. I'm not meaning to contest their credibility. You know, at the time my client was working with Mr. Harper, he was not open to accepting a 10-year plea deal. We know that by the decisive time, he was open to accepting a 10-year plea deal because he accepted and he pleaded guilty in a way that he thought carried within a 10-year statutory maximum. So between his work with Harper and his work with Wentz, his thinking about this case fundamentally changed. And there was a letter where your client said something about the appeal waiver and how he didn't want to give that up. So he didn't say he didn't want to give it up. He alleged that the government was retaliating against him because he didn't give up the appeal waiver. I mean, the letter is not, I admit, a model of clarity. But nowhere in that letter does he say, you know, I insisted on a plea waiver, an appeal waiver, excuse me. And I think there's a good reason for that. You know, the only It just strikes me that what we're talking about now are facts. And you have your perspective on the facts, but we have a standard of review for how we review those. And I realize you have, you know, arguments for why we should look at the facts your way, but it doesn't seem correct to say that there's no factual impediment to ruling in your favor. Well, I mean, the ultimate standard review is the reasonable probability question. The court reviews reasonable probability de novo. To the extent that you think that the court said as a factual matter, I think he cared more about his appeal waiver than the 10-year sentence. Again, a question that was never put to him due to counsel's deficient performance. I do think that finding rests on the legal mistake. How many years was he facing? He was facing 90 years under the open plea. Ninety years on the plea deal. 90 years. The plea, not the plea deal. Correct. Not the plea. He was facing 10 years on the plea deal. Right, and that's the — But 90 years, did anyone ever say you're facing 90 years? His attorney never said that. His attorney never said that. Did the judge ever say that? The judge did say that during the plea colloquy after my client made the decisive decision to reject the deal. Did he say 90 years? He said — Or did he say 20 years on each count? He said 20 years on each count, and then 10 years on count five. Did anyone ever say 90 years? I do not believe that anyone — I mean, you said it early, and I was about to — I was going to ask somebody if anybody ever said 90 years. You said that early. But they could be in the end on the maximum punishment. Yes. I do not believe that anyone ever said the words 90 years to my client. But each of the — there's no question that each of the drug offenses was a 20-year offense. Correct. And they're separate crimes. Correct. And the plea offer was plead guilty to count five, the gun charge, which has 10 years, and will dismiss the other four counts, the drug counts. Correct. Which meant a maximum of 10 years. Which meant a maximum of 10 years. And my client thought — But the affidavit or the declaration of the lawyer talks in terms of the sentencing guidelines. The guidelines — what the guidelines are going to be or whether they may change. But it doesn't say much about the permissible punishments. So I think that was — What's going to happen to those. Correct. I think that was Attorney Wentz's error. He advised my client on the guidelines range, but he did not correctly advise my client on the statutory maximums. He said there would be no difference between the statutory maximum under the open plea. He doesn't say anything. He never told him that you're facing 90 years on the charges in the indictment. Correct. My client thought that whichever choice he made, he would face a maximum of 10 years. I think that's common ground between the parties. He said he would face the maximum of 10 years? He said the guidelines would have a maximum of 10 years. What did he say? I believe he said there was no difference in the sentencing exposure between the two ways of entering the plea. This is what the lawyer told him. This is what the lawyer told him. The lawyer told him you could get 20 years on each count. Correct. Okay. So the lawyer did not give my client the guidance he needed, which was that he was facing a choice between a 10-year maximum on the one hand and a 90-year maximum on the other hand. And, you know, going back to Judge Rushing, your questions, anything my client said about the appeal waiver at that point was infected by that misadvice. Well, what about once he was actually sentenced to more than 10 years and he was given an opportunity to speak to the court and had nothing to say? I would say the magistrate found that some evidence. It's not dispositive. And the same with when he flagged problems for his appellate attorney. He flagged a problem with his plea counsel but didn't mention this. Again, not dispositive. But the magistrate and the district court found that to be some evidence of what he would have done contemporaneously. But once he found out that the guidelines weren't the only controlling factor. Yes, so he didn't say anything at the sentencing. You know, I think it would be a lot to ask a defendant to kind of interrupt a judge and say, Judge, I was told that. You don't have to. At a sentencing, the district court actually gives the defendant an opportunity to allocate. And I think the inference that one could draw from that is that his lawyer correctly advised him, but that's not this case. We know that his attorney incorrectly advised him. His attorney said so in an affidavit. So, you know, there's no question that my client went into this thinking that he had a 10-year exposure and came out of it with a more than 10-year sentence. Now, why he didn't kind of object at the time is a question that I don't know the answer to. But I don't think you can take much from that, nor from his decision not to appeal. Well, why can't I take much from that? The magistrate judge and the district court found it persuasive. They made factual findings, and I'm reviewing that. So give me your best argument for why that was a legal error or why it was clearly erroneous, why it can't factor in to the analysis. So the question of prejudice, what would he have done in the counterfactual world in which he had been correctly advised, I think does not really have anything to do with whether he would have objected to his sentence at the sentencing hearing. Well, no, I mean, the point is you look for, you know, it's easy to say later, I would have done something different. So courts try to look at the time and see what can we find out about what the defendant would have done. And when they see, well, he was sentenced to a lot more than what he claims he thought he was exposed to, and he claims that the length of the sentence is the overriding factor. But when this happened, there was no expression of surprise or, you know, again, not dispositive, but courts are allowed to look at these questions, at these facts. So I think he was confused. I mean, he testified that he didn't understand what happened to him until he got to prison and spoke to someone there. But I think what makes this case easy is that the counterfactuals are just more straightforward than they are usually. You know, we know he was open to pleading because he pleaded. This is not the kind of case, you know, there are difficult cases where someone goes to trial and then says, well, I don't like what happened at trial. You know, I want to take that back. I want to plead. I mean, you know, he pleads a day or two after he turns down the plea deal. The only thing he cares about, the record is very clear, was his ultimate sentencing exposure. You know, there are difficult cases. Is the record clear? I mean, that's, I'm not trying to argue with you here, but you can't say the record's clear that's the only thing he cared about. The magistrate in the district court said he cared about his appellate waiver. He cared about trying to, even when it came to sentencing exposure, he thought he could make some traction with the judge by pleading to everything versus pleading to just one count. No, I completely agree, and I'm not meaning to contest that. I'm just trying to say that it's sentencing exposure either way. Right? The goal of the appellate waiver, supposing that he, you know, really would have cared about that, had he been properly advised, was to reduce the years of his sentence. You know, when you plead guilty, however you plead guilty, whether you plead open or you plead with a deal, you're not appealing your guilt or innocence. You know, you're appealing the years of your sentence. You're appealing procedural reasonableness, substantive reasonableness. Judge Gregory, you were on the panel that adjudicated Mr. Brown's direct appeal. It was just kind of guidelines, reasonableness appeal. So, you know, his whole strategy was reducing the number of years he wanted to spend in prison. Now, I agree that kind of there are different ways of going about that and that that's what this record is about, but this is not the kind of case where someone cares on the one hand about immigration consequences, on the other hand about years, and you kind of have to weigh apples and oranges. You know, this is a case where my client's objective was to spend fewer years in prison, and I just think it's hard to say that there's not a reasonable probability that had he been told 10-year maximum, 90-year maximum, he would have made the choice to face the 10-year maximum. I mean, I think in that respect, this case is a lot like the Baker case, the Third Circuit case that we flagged in the 20HA letter, where the court there said, you know, there are credibility findings below. I think there were clearer credibility findings in that case than there are in this one, but ultimately it doesn't matter because the question is reasonable probability. The disparity is so great that we believe that any defendant in his shoes, had he been properly advised, would have taken the deal. I think that is clearly right here. I think it would have been irrational for someone to face 80 additional years of a statutory maximum in order to preserve their right to appeal the reasonableness of the sentence, and I think at the very least, you know, given that reasonable probability is not a preponderance of the evidence. But Judge Rushing is exactly right. There wasn't a complaint about it at the time. I mean, he stood mute when the judge gave him 17 and a half years, and his lawyer did. Yes, both he and his lawyer did not object to the 17.5-year sentence. And the government admits that the lawyer conduct was deficient, constitutionally deficient. The question is prejudice. The only issue we got is prejudice. Correct, and I think that's also Does anything in this record indicate he was ever told you faced 90 years in the penitentiary? No, I do not believe he was ever told that. Does the record indicate that he was ever told 90? You've qualified it. Can you tell me absolutely he was never advised on this record that he faced 90 years? He was never advised on this record that he faced 90 years. And that's what was deficient. I mean, deficiency is conceded here. That's what makes this case different than some of the other cases where, you know, an attorney properly advised him. And, again, I just think There was no, and this is a question I don't know the answer to, is that there was no testimony from the first attorney, the attorney who was not deficient, that he advised him of the maximum exposure. So, no, because my client never talked to Mr. Harper about whether he would plead open. Mr. Harper brought my client a 10-year plea deal, you know, basically the same plea deal that my client ended up turning down. And my client said, I don't want to face 10 years in prison. Please resign as my lawyer. Now, obviously in that form But he never went through, when the judge says 20, 20, 20, that means you add those up. I do not believe that they got there. I don't think that there's testimony that they got there because my client, you know, when he was working with Mr. Harper, was just not willing to plead to, I think, the kind of deal that was realistic in his circumstances. I see that I'm out of time. But the 20, he told him, he did tell him 20 four times. You can get 20 on each count, right? The judge did. The judge did. Yes. And his lawyer had told him 10 was the max. Correct. And he conferred with his lawyer. Why didn't that flag something? You know, I think when your lawyer tells you 20 is twice 10. Right. So I think it did flag something. And he got 17 and a half. Correct. So, you know, I think it did flag something because that's the point in the sentencing, in the plea hearing. But the 20 was, you say incorrect, it was really 90. It was really 90 because the sentences could run consecutively. And that's the point of the plea hearing where my client turns to his lawyer and says, can I talk to you? You know, that's on JA-52. And obviously the conversation with the lawyer is We're not here on a direct appeal. We're here on a 2255. Right. The only question is you said Judge King is prejudiced. So on the Sixth Amendment claim against involving the lawyer. Correct. The simplest part of this criminal defense work should be dealing with pleas, I would think. And dealing with statutory maximums, which are written down in the statute. I've been kicking around that a long time now. I thought that part was the easy part. I definitely agree that the attorney performed very deficiently here. And that's, you know, common ground between the parties. All right. You've saved some time. Thank you. Let's see what the government wants to tell us about this. Mr. Silverman, it's good to have you with us. Thank you, Your Honor. Judge King, I'd like to pick up right where you left off. If you turn to page 52 through 53 of the joint appendix, you'll see where Judge Dever, who has never been accused of error and did nothing wrong in the Rule 11 hearing, says repeatedly, on each count you can be sentenced to 20 years. Then again on pages 55 and 56. Did he say consecutively? He says on each count. Did he say consecutively? He does not use the word consecutively. Did he say you could get 90 years? No, he says 20 on each count. You could get 40 or you could get 60 or you could get 80? No, he says 20 on each count. And then he says again that I can sentence you up to the statutory maximum. But the question is we're really also talking about directly the lawyer here. And what did he say to him, his own lawyer? On page 516 of the joint appendix, his first attorney says he explained the statutory maximum, which would have been zero to 20 on the drug charges and zero to 10 on the firearm charges. Below, they never contested this issue of how much did he know, the 90 years versus the 10 years. He said he talked in terms of the guidelines in his declaration. You're talking about that or you're talking about something else? No, we're talking about Mr. Harper who gave him proper advice and told him exactly what the sentencing was and who has never been accused of any error. I'm talking about Wentz. Wentz's admission. I thought Wentz was the one that was the maybe I'm. No, Wentz was the one. Maybe I'm focused on the wrong lawyer. I thought the ineffective counsel was, he was represented by Mr. Wentz. He is talking about Mr. Wentz as the ineffective counsel. But the government's point here is that he had some knowledge that he was facing 90 years and that there was evidence in the record. In addition, unlike in other cases. So you're saying there was evidence from Mr. Harper? From Harper and from the judge. That was the prior lawyer. Correct. Who was out of the case.  So Harper was replaced by Wentz. That's correct. And Wentz told him 10 years. No, Your Honor. What Wentz has admitted to doing wrong was not clarifying that the court could go above 10 years. He doesn't say that he said that the maximum was 10 years. That was not a fact found below. He didn't tell him what the statutory maximum. No, but the court did. He said he didn't focus on the statutory maximum. He focused on the guideline. That's correct. And that's the error. And the question is, is there a reasonable probability that he would have done something different? So Wentz didn't tell him 90 years. No, that was the error. But they cannot show prejudice on this record. You agree that he could have gotten 90 years. The government does, right? In theory, he could have gotten 90 years, but there's no case they can point to where a person in this position would have actually gotten 90 years. He was looking at the whole thing. We're talking about the statutory maximum that's embodied in the indictment for five counts that the petitioner pleaded guilty to. When he pleaded guilty to those five counts, he could have gotten 90 years in the federal penitentiary. Correct, Your Honor. But? In the aggregate. They could sentence him end to end. I remember we had an old judge up here in West Virginia, and he used to explain it to these defendants, these consecutive sentences, by describing railroad cars. And he said these railroad cars are in a row. And there's 10 years in this one and 20 years in this one and five years in this one. And you have to do one before you get to the next one and the next one and the next one. They're consecutive. He explained what consecutive meant and gave them examples. So here are the consecutive nature of these independent charges, five independent charges, aggregated 90 years. That's correct, Your Honor. Okay. But in this case, they cannot show reasonable probability. And that is because what they have not shown is that under Frye and Leath's framework, in which we looked at what the petitioner wanted to do at the time he entered his guilty plea, he thought the open plea was worse than the government's offer. And that's because under the open plea, he preserved an important constitutional right and thought he would get a lesser sentence. That was not advice on ineffective system of counsel. But under the open plea, he thought he would get a five-year sentence, as opposed to what his attorneys had told him correctly was that he would not get less than the guidelines if he pledged to the government. No, the attorney told him that it wouldn't matter whether you pledged with an agreement or without one. Your exposure would be 10 years. That's what he said. So in other words, it's a bonus. You mean to tell me I can go without an agreement and I keep reserved the right to appeal and I can only get 10 or, you know, I can take a deal and not have it, then that's a no-brainer not to take the one with no plea. That's what he was told. That's what he said. No. He didn't? Didn't his lawyer say that either way it didn't matter? Either way, the exposure was the same whether you pled or just straight plea or with an agreement. That's not what he said? No. The attorney said that he didn't. I'm not talking about, I'm talking about, is that what? Mr. Brown said that. Exactly. But Mr. Brown did not testify credibly before the magistrate judge. That testimony was not credit. Wentz's testimony was that he never explicitly said that he could go more than 10 years. Mr. Wentz's declaration says, I advise Mr. Brown, that for sentencing purposes, it did not matter whether he accepted the plea agreement. That's in paragraph 5. And I believe when he clarifies that in his testimony, it was in reference to the guidelines. He doesn't say, he never said he couldn't go above 10 years. That much Wentz says he didn't say. He also doesn't admit to saying, to this colloquy, to the conversation between the two of them that has been important to their case. But again, the question is whether Brown would have taken the open plea or the government's offer had he been properly advised. And his calculus of this deal was that the open plea had more constitutional rights and had a lower likely sentence. Given that, they have not shown by a preponderance of the evidence that he would have taken the government's offer, which had fewer constitutional rights. You acknowledge that he should have been properly advised. Yes, Your Honor. That there was a constitutional defect. Yes. In failure to advise him that he could have gotten 90 years. We were quibble about whether the... He was entitled to know what the maximum sentence was. Yes, he was. The government agrees to that. Yes, Your Honor. And that's 90 years. Yes, Your Honor. Is it right or wrong? Yes, Your Honor. All right. And you agree that he had a constitutional right as a criminal defendant in the federal court to be advised of what the maximum penalty was that he faced from the charges and indictment. Yes. And Judge Devereux... But your position is he was not prejudiced by the proposition that he... His lawyer didn't make sure that he understood that. There was no prejudice to him. No prejudice at all. It wouldn't have made any difference. That is correct. That he got 17 and a half years in the sentence. That is correct because we look at how he would have assessed the evidence under Lee. We look not to a rational or reasonable person, but as to this particular defendant. This particular defendant believed deeply in his... But his lawyer said, I advised him that it wouldn't make any difference. It would not matter. It does not matter. You told Judge Gregory that he didn't say that. But it does say that. I've got it in front of me, the declaration. It did not matter whether he accepted the plea agreement. If he accepted the plea agreement, the maximum he could have gotten was 10 years. You have to agree with that too. Yes. So he got seven and a half extra years. At least for not accepting the plea agreement. He was looking at the time he pled guilty, he was looking at the likely time in prison. Under his calculus, that was five years. And he decided to take the risk. He knew it was a gamble. And the evidence, he had to present evidence that he would have accepted the government... The gamble was 10 years. Well, if it was a gamble, 10, 10. Either way you get 10, one, you get to keep your constitutional right to appeal. It makes sense that you would take the one that you guaranteed. That's what he was told. You can't get around that. He was also told by the Rule 11 hearing that he could go above 20 years. He swore that he knew that. He swore that he knew that the advice was advisory. He swore to all of that. Oh, yeah, but with the judge, I mean, you stand there, it's your lawyer who's your friend in the court. I mean, everybody knows that. I mean, I used to do a lot of criminal defense work. I mean, you can't depend on your lawyer giving you the right advice. You're not going to stay a whole lot with the judge on the bench. I mean, in other words, he said, my exposure is 10 years. I mean, so why not go with that? Keep observing. And the reason he wouldn't go with that is because he thought he would get only 5 years if he did an open plea. That is his testimony below. And he wanted to keep his appeal right. There is no evidence in the record that he would have waived his appeal right. Well, 5 is under 10, so what does that make a difference? It would be higher if it makes a difference. But you're saying the difference is he thought he was going to get 5. Yes, and that he thought that this open plea was a much better option under his calculus. And in addition, he had additional constitutional rights. And they have to point to evidence in the record to show he was willing to accept a deal pursuant to the terms the government offered. But that would be a good argument if he got more than 5 but he got to 10. He said, look, I wanted 5 because that's what I thought. No, he still didn't get, based on what he was told, 10 is what's the guarantee. Now, he may have hoped for 5, but what he was told, you can't be more than 10. So he wouldn't have a poor argument to say, I want 5. But it's north of 10 is what the problem is, based on what his lawyer told him. Either way, with a plea agreement or without. Under Strickland, they had to show he was willing to accept the government's terms. And under Fry, that means pursuant to the terms earlier proposed. He has no evidence in the record he was willing to waive his appeal rights. This is an argument that the magistrate and district court found persuasive, found as a matter of fact. What does that have to do with it? There was no agreement. He wasn't tied to any agreement. What he's tied to, he's anchored to bad advice. That's what we're talking about in Strickland. You're saying because you go back to what the agreement was before. Well, that's erased. He didn't take it. Sorry, I didn't. Go ahead. He played straight up. He played straight up. Is that what you still call it? I usually refer to it as an open plea, Your Honor, but straight up is a good term. He played straight up. Yeah, straight up. I mean, you're knitting your brow, like I said, out of space. I mean, he didn't take the agreement. He said, no, I'm going to do it because, you know, it makes sense. I get to keep what I want. That is preserve the right to appeal. But my exposures are going to be the same either way. And so it's fine. I mean, that's not inconsistent at all. Based on what he was told by counsel. Don't you think what the counsel tells you there is very important to the Sixth Amendment right to effective counsel? Absolutely. And the United States conceded ineffective assistance of counsel and said we needed a credibility determination. At the hearing below, the magistrate judge did not find the testimony from Mr. Brown credible, that he would have accepted the government's offer, that Brown did not appeal that rule. Without a credibility determination under Merzbacher, again, he is not entitled to relief. And there's a good reason why they didn't find him credible. His story contradicted the record. Again and again, he pointed to a conversation that didn't happen. He doesn't explain some of the conversations that did happen on the record. His story was not credible to the district court. And the magistrate judge pointed out that it was also not supported by contemporaneous evidence. He needed, under Lee and Murillo, contemporaneous evidence that he was willing to waive his constitutional rights. In this case, the most important constitutional right to him was the appeal waiver. And he has no evidence on record that he was willing to waive his appeal rights. His first attorney said it was important to him, the appeal waiver. Second attorney said it was important to him. He says on direct appeal, I want this appeal right, and the government is punishing me for asserting my rights. All that is evidence in front of the district court and magistrate judge that he would not, as a matter of fact, have waived his appeal rights. That sounds good, but it boils down to he pled guilty under information that was wrong from his counsel. He was influenced by it. That shows ineffectiveness. But the question then becomes, what would he have done had he known the other side of the information? And as a matter of fact, based on the information before it, the magistrate and district court found that he would have done nothing different. And they have not pointed to evidence in the record. And what's the standard for whether he would have done different? What's the standard to determine whether it is what? Is it absolutely so? No, no. Reasonable probability. Probability. Don't you think it's a probability, if I've been told correctly by my counsel what my exposure was, that would inform this important decision about your being locked up in prison? Not to this defendant on these facts. And this goes to another point that we make in our brief, and I think it's your experience that the defense attorney would talk to us, is that in order to be affected by advice, good or bad, you have to be willing to listen to your attorney. In this case, there is no evidence that Brown listened and relied on his attorney. He got good advice from Mr. Harper. He says no to Mr. Harper. He says no again, and he says you're fired. Wentz comes and offers him the same deal. He again refuses to take it. It is his own idea to do this openly. He never listens to his attorney on that. And because he never listened to any of his attorneys, indeed, on direct appeals, this court knows, he wasn't even willing to let the attorney point to it. Is there anything, any bad advice to the effect that you face 90 years? That's the, that jumps off the page at me. And you, and you, and you, and you. Again, Judge Deveren. You haven't got past that yet. Judge Deveren, the Rule 11 hearing never uses the word 90 years. Well, and neither did, more importantly, did either one of those lawyers. You were referring to the first court lawyer, too, Harper. Harper explained the sentence. Is there any evidence that they, that Harper or Wentz, but Wentz is the one we're looking at. He represented him at the plea. Did he ever tell him 90 years? The answer is no. Not, it was not a question asked. And it wasn't, and the judge didn't tell him 90 years. But he pled straight up to offenses that authorized the imposition of a 90-year prison sentence. That's correct, Your Honor. That is correct. That's the fact. That is the fact. I have a factual question about the guidelines advice. I know the, it seems the first attorney says, I advised him about the statutory maximum and the guidelines. The second attorney, who's deficient, says I advised him about the guidelines, omitted to talk about the max. Did that attorney advise, or did either attorney advise him about an upward departure? Yes. I thought I recalled that from the record, but I can't, I can't find it for sure. Was he, was he advised that because of beating the police officers, he was subject and likely would get an upward departure? Yes, and that's another reason why this. And that departure was above 10 years, right? He knew it was a gamble. I believe Harper was the one who constructed this, so I would have to check the record. But my understanding would be that because Harper was the one who, no, I guess I don't know where he thought the upward departure would be. Okay. We don't know where the departure would be, but he was advised departure was likely. He was told, and he admitted this, that he knew this was going to look really bad. He knew that he had a district court judge who was going to, who was known as a strong sentencer. He, in his letter to the Fourth Circuit, or I guess letter to his attorney, he says, I'm aware of this judge's tendency. And the judge found that basically this is why his appeal rights were so important to him. And both the magistrate judge and district court found, as a matter of fact, that these were of the utmost importance to him. They had not challenged that finding below. Which was the most important to him? The appeal rights. Pardon? The appeal rights. The appeal rights? Yes. And you referred to that as a constitutional right? Yes, Your Honor. I believe so. Where does that come in, in the Constitution? I thought it was a statutory right. I thought it was a right that. 1291, if you file an order, that's in this code. If it was a constitutional issue, though, that even without 1291 there would be no right to an appeal to the Supreme Court, at least? It may be statutory to direct, clearly it's Congress's authority to direct how appeals get conducted. But he was interested in an appeal. Yes, he was. For some reason. And he, obviously. The question is whether a defendant, if the question is that a defendant is entitled to know what the permissible sentence is, was he advised here? Your Honor. And was there a reasonable likelihood that they didn't know and he'd face 90 years if he was going forward with these five guilty pleas? Which is what he made. Your Honor, under the rule, as far as I'm aware and as far as they're briefed, the requirements of a Rule 11 hearing, judges never follow those. They've never pointed to any error. He says 20 years repeatedly on each count. It has never been that you need to say that 20 times 4 is 80. He then says 10 years again. So he knew at least 30 years, and there's no reason to think he would have ever gotten 30 years. So it doesn't, but there's also whether this is how he factored into his calculus. Well, the lawyer said it wouldn't make any difference whether you get a plea deal or not. I advised Mr. Brown that for sentencing purposes it did not matter whether he accepted the plea agreement. Because the guideline range would be the same. Yes, that is. That's what Mr. Wentz says he told Mr. Brown. And then as in LeMaster and as your dissent in Murillo pointed out, there was this Rule 11 hearing. The Rule 11 hearing explained it. He swore at the Rule 11 hearing he understood that these were advice that he had gotten and that the court could go up to 20 years on each count. The problem is he never received proper advice in what it would cost to reserve the right to appeal. Granted, he was interested in that, right? The problem is he was never informed what the cost is. You tell a client, okay, that's what you really want, but let me tell you the cost of that is 20 years, whatever, 90 years exposure. Then you can win. Okay, right to appeal. Oh, I can get this. But here he was told the cost is zero because you can get 10 going this way, 10 is the max going that way. So, oh, well, then I'll throw in a right to appeal. I mean, it's just he never had to. That's what's so important about our system, right, the Sixth Amendment. That's why Gideon had to pencil write that petition. It used to be you didn't have counsel at all, just kind of go in there. That's an important part of it. He never was told what the cost is. And that's the key. It's like saying, okay, well, we don't know what it is. He wasn't. That's in the record what Judge King read to you. That's what he was told. And saying to the government, saying, oh, that doesn't matter at all, but the judge said something. You know, judges, that's a difficult situation. You know, your lawyer is your partner. She's the person that you stand up with, stand in the well with. They tell you that, and then you say, well, I know the judge is saying all those things, but your real exposure is 10 years. And you're right, Your Honor, and that's why we never contested ineffectiveness. But the question then becomes prejudice as to what this defendant on his own views of the law would do. And the burden is on them to show it. And the only evidence they offer is the disparity. But they show no evidence that he was willing to waive his appeal rights. And we know that he viewed this very differently from how his attorneys or you and I viewed it and wouldn't listen to his attorneys. And, therefore, he thought he would get a lesser sentence by doing the open plea. There is no evidence that given the chance for that five-year sentence, which would have still been on the table had he done the open plea, he would have taken away the risk of a higher sentence. It was his risk aversion and risk tolerance that we're looking at, and on these facts. But his lawyer told him there wasn't any risk. It didn't make any difference. It did make some difference. It did not matter whether he accepted the plea agreement. Oh, but he testified. Because the guideline range was the same. And he bled the whole thing, and he got 17 1⁄2 years. I think it's page 501 of the JAA, and it's also in his deposition testimony, where he says he knew it was a gamble. So he knew something could go differently if he did the open plea. He thought he would get a lesser sentence. And whether he was looking at an additional year or something, because he repeatedly says that it couldn't go higher than 10 years when the guidelines range was only one. Who was supposed to tell him it could have gotten 90 years? The district court as it did in its determination. The first person that should have told him was his own lawyer.  And that's Mr. Wentz. Correct. He should have told him you can get 90 years. Again, yes, Your Honor. The question is whether his failure to do that is prejudicial. Because you admit that as a constitutional matter, he should have been told you can get 90 years. You can get the maximum punishment end-to-end. Yes, Your Honor. It's a five-count indictment. Yes, Your Honor. And each count has its own offense, and each count has its own penalty. Yes, Your Honor. It's not complicated. The inquiry from Fry and Lee is the inquiry. The question is whether the lawyer was ineffective constitutionally. And that means did he not perform up to standards and was it prejudicial? And you admit he didn't perform properly. Absolutely, Your Honor. But you say it was a prejudicial. Correct, Your Honor. And so that's where we are. Yes, Your Honor. I see I'm out of time. Government submits that the judgment should be affirmed. And if not, according to their argument, there is no credibility determination. Under law, without a credibility determination, you cannot be entitled to a right. So the proper standard here is for a vacature so that the district court can reassess and apply whatever the legal standard that they argue for is. Thank you, Your Honor. Thank you. Mr. Revit. Just a few quick points, Your Honors. First, I think it would be helpful for me to read the next sentence of Attorney Wentz's declaration, the sentence after Judge King you read. He says, I also believe that I did not advise Mr. Brown during plea negotiations that his plea offer contained a 10-year statutory maximum sentence while pleading guilty to all five counts without a plea agreement carried a 20-year statutory maximum. My client was never told, I think that sentence makes very clear, that there was a 10-year difference on the one hand and a higher than 10-year difference, a 90-year difference on the other hand. Everything that, every decision he made was in the universe of the 10 years versus the 10 years. In that universe, strategies like, you know, preserving your right to appeal, as you and I discussed, Judge Rushing, strategies like throwing yourself at the mercy of the court seem like strategies to reduce your sentencing exposure. But because he never knew that there was such a gamble, that there was 80 years of potential sentence on the other side, he never had the chance to weigh the considerations that he had a constitutional right to weigh. The government seemed to say that his first attorney advised him about statutory maximums. Do you agree with that fact? Yes, so I went back and looked as my friend from the government was speaking. The attorney did advise him about a 20-year statutory maximum. Again, I don't think that matters because, you know, at the time that we're considering was the time he was working with Wentz, was the time he pleaded guilty, was the time he turned down the plea deal. He was not in a realistic place when he was working with Attorney Harper. Why doesn't that matter? I mean, this whole argument is premised on the idea that what your attorney says to you matters the most. Right. So shouldn't it matter that his first attorney told him the statutory maximum that he faced on all of these counts? You know, I don't think so because I think four months later you have, you know, maybe if Wentz had been silent that that would have mattered. But Wentz affirmatively said, and this is on JA 184 to 85, there is no difference, it's 10 years either way. But the 20 years is wrong. The 20 years is also wrong. The 20 years is 70 years off. You read it, while pleading guilty to all five counts without a plea agreement carried a 20-year statutory maximum. That's 70 years wrong. So I agree that it's also incorrect, but, you know, I think when your second attorney. That's his lawyer. Correct. In the declaration that he told him he could get 20 years. Right. And when the attorney. The question is whether the lawyer gave bad advice, they agreed to give bad advice. Was it prejudicial? Right. And when the attorney you're working with tells you there's no difference in a statutory maximum, I don't think you should have to think.  There's no testimony and there's no evidence that he said there's no difference in the statutory maximum. Right. I thought the testimony at trial is that he said I told him the guidelines range is what matters. The guidelines would be the same. There'd be no difference in the guidelines. I failed to instruct him about the maximum. Right. And now we're not quibbling about whether there's an error. I think that's been established. Everyone has conceded that. Right. The question is prejudice. Right. And I think that the evidence is the declaration. It's where he says there was no difference. It did not matter whether he accepted the agreement. Right. And he says I did. The guidelines would be the same. Right. Not about that the maximum was the same. And there was testimony in front of the magistrate, right, not just this declaration. Right. But I think the testimony is consistent with the declaration, which is that he did not properly advise my client on the maximum. Right. What do you say to the government's argument that the only arguments you've put forward are about the legal standard, so that if the court agrees with you, that the only remedy would then be to send it back to the district court to apply the correct legal standard because you have not quibbled with its findings of fact? I think that the right result in this case is just to say setting aside all of the findings of fact, there is a reasonable probability of prejudice. I'm sorry. Come again. Setting aside all the findings of fact? Accepting everything the district court said is a factual matter, there is a reasonable probability of prejudice. I'm sorry. My first formulation was an awkward one. That's what the Third Circuit did in the Baker case. And I think that makes sense. You know, the contemporary. So you would have us say the district court applied the wrong legal standard. You would have us apply the right legal standard to the facts ourselves and come to our own factual conclusion about what the defendant would or would not have done? You know, I think that I'm with you until the last clause. I think that's a legal conclusion. I think prejudice is a legal conclusion. I think Strickland makes that very clear. We have competing testimony. We have testimony that doesn't agree with itself. There's a bit of credibility to weigh here. How are we to apply that legal standard here, as you suggest? I think you can do exactly what the Third Circuit did in Baker and just say, even assuming he wasn't credible, even assuming that the attorneys testified credibly, which, as we discussed earlier, we're not contesting in this action, there is a reasonable probability, not a preponderance, it does not have to be a preponderance, that but for his attorney's bad advice, he would have accepted the 10-year plea deal. So you think even if we discounted the defendant's testimony, that these conversations with his attorney that he says didn't happen, he was not ever advised that this was the max, what really mattered to him was the appeal waiver because that's what his attorneys are talking about, but nevertheless, there was a, he would have, we can find that he would have accepted this plea? That's correct. I think you can discount everything my client said. And what's the legal error? There are two legal errors, at least. The contemporaneous evidence standard is legally incorrect, as we discussed in our briefing, we discussed a little today, and relying on advice that was infected, relying on conversations with Mr. Wentz that were infected by his bad advice is a legal error, I think, as Judge Tinkovich explained in the Tenth Circuit decision we cite Kern. You agree the district can consider contemporaneous evidence? The district court can consider contemporaneous evidence, and there is contemporaneous evidence here. I mean, the fact that he pleaded is the contemporaneous evidence. The disparity is the contemporaneous evidence. That's the way the Second, the Third, the Sixth, the Tenth, and the D.C. Circuits all think about this issue. And I think, you know, this case falls well within the kind of rubric set by all of those cases. There is contemporaneous evidence because he pleaded. We know he was amenable to pleading. There is contemporaneous evidence because there's a disparity. That disparity makes it clear that a reasonable person, had he been correctly advised, would have accepted the plea deal. You don't have to think that's more likely than not. You just have to think there's a reasonable probability that so. So it really just comes down to your second legal standard error where you say that, I guess, the district court shouldn't have put so much weight on certain evidence because it was infected with attorney error? No, I don't want to give up my first legal error because I think the district court. Well, that was not a per se rule. The court didn't require contemporaneous evidence. It looked at contemporaneous evidence, which is allowed to do, as you have just said. I read both decisions below differently. I read them as saying that he needed contemporaneous evidence, and I read them as assessing his credibility against the lens that he needed to proffer contemporaneous evidence. But, you know, I don't think that's going to be decisive either. I think ultimately what matters is just that the record, the cold record, setting aside everything my client said, I'm sorry, I see I'm out of time, is so clear that he was prejudiced by this bad advice. We know he was prejudiced because he ended up with a sentence that was 7.5 years higher than it possibly could have been. We therefore would ask that you vacate the judgment below and remand with instructions for the government to offer the 10-year plea deal. Thank you. Thank you very much, Mr. Ravitch. And I want to particularly mention that I know you were court appointed, and we appreciate your efforts in this case. We couldn't do our work without lawyers like you and those in your firm.
judges: Robert B. King, Roger L. Gregory, Allison J. Rushing